# ATTACHMENT 1

Sierra Club’s February 20, 2026 Notice Letter

SOUTH CAROLINA
ENVIRONMENTAL
LAW PROJECT

*Lawyers for the Wild Side*

*PO Box 1380, Pawleys Island, SC 29585 | (843) 527-0078 | www.scelp.org*

***Executive Director & General Counsel***
Amy E. Armstrong | amy@scelp.org

***Deputy Director***
Michael G. Corley | michael@scelp.org

***Attorneys***
Benjamin D. Cunningham | ben@scelp.org
Leslie S. Lenhardt | leslie@scelp.org
Lauren Megill Milton | lauren@scelp.org
Emily S. Poole | emily@scelp.org
Kenzie Poole | kenzie@scelp.org
Monica K. Whalen | monica@scelp.org
Jessie A. White | jessie@scelp.org

February 19, 2026

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Century Aluminum of South Carolina, Inc.
P.O. Box 1000
Goose Creek, SC 29445
7011 2970 0004 3432 4528

Scott Courtney, Environmental Manager
Century Aluminum of South Carolina, Inc.
P.O. Box 1000
Goose Creek, SC 29445
7011 2970 0004 3432 4528

Robert Quak, Plant Manager and
Responsible Official
Century Aluminum of South Carolina, Inc.
P.O. Box 1000
Goose Creek, SC 29445
7011 2970 0004 3432 4528

Jesse E. Gary, President, Chief Executive
Officer and Director
Century Aluminum Co.
One South Wacker Drive, Suite 1000
Chicago, IL 60606
7011 2970 0004 3432 4535

John DeZee, Executive Vice President,
General Counsel & Secretary
Century Aluminum Co.
One South Wacker Drive, Suite 1000
Chicago, IL 60606
7011 2970 0004 3432 4535

**RE: Second Amended Notice of Intent to Sue for Violations of the Clean Air Act**

Dear Mr. Courtney, Mr. Quak, Mr. Gary, Mr. DeZee, and Century Aluminum of South Carolina, Inc.:

On behalf of the Sierra Club and its members, we are writing to provide you with notice that the Sierra Club intends to file suit against you[1] for violations of the federal Clean Air Act, 42 U.S.C. §§ 7401-7675, the South Carolina State Implementation Plan, and the South Carolina Title V Program. These violations occurred and continue to occur, and are likely to recur, at the Century Aluminum of South Carolina, Inc. primary aluminum smelter complex (hereinafter, "Mt. Holly

[1] As used in this notice letter, "you" refers to Century Aluminum of South Carolina, Inc., and all persons identified in Section B, *infra*.

***Board of Directors*** - Jerry Schulze, Chairperson, J. Mac Bennett, Keith Bowers, Jamelle Ellis, Terry Grayson-Caprio, Liz Igleheart, Tom Kester, Bess Lochocki, Michelle Mapp, Carla Pinckney, Cynthia Powell, Greg VanDerwerker, Davis Whitfield-Cargile, Keith Williamson
***Board Member Emeriti*** - Frances Close, Robert Schofield

Smelter" or "the Facility"). The Facility is located at 3575 Highway 52, Goose Creek, SC 29445 in Berkeley County, and is covered by Title V Operating Permit TV-0420-0015.

The citizen suit provision of the Clean Air Act allows Sierra Club to commence a civil action for violations of a Clean Air Act emission standard or limitation and for modification of a major emitting facility without a permit required under part C of subchapter I, relating to the prevention of significant deterioration of air quality. *See* 42 U.S.C. § 7604(a)(1)(A) & (a)(3).

To the extent required, this notice is being provided pursuant to 42 U.S.C. § 7604(b) and 40 C.F.R. Part 54. Sierra Club will ask the court to impose appropriate declaratory and injunctive relief and civil penalties under the Clean Air Act. Sierra Club will also ask the Court to require a beneficial environmental project under 42 U.S.C. § 7604(g)(2) in the surrounding areas impacted by emissions from the Mt. Holly Smelter. Sierra Club will further ask the Court to award Sierra Club its costs of litigation and attorneys' fees, as well as any other appropriate equitable relief.

## A. The Specific Provisions, Standards, Limitations, or Orders Violated and Specific Activities Alleged to Constitute Violations, including the Dates of Such Violations

The Mt. Holly Smelter is comprised of two center-worked prebaked one (CWPB1) potlines that reduce alumina ore to elemental aluminum and supporting processes, including a green carbon plant, a carbon anode baking furnace, an anode rodding process, a pot repair process, and a casting plant. The Mt. Holly Smelter is an existing major stationary source for particulate matter (PM), including $PM_{10}$ and $PM_{2.5}$, sulfur dioxide ($SO_2$), nitrogen oxides (NOx), carbon monoxide (CO), and total fluorides (TF).

Mt. Holly Smelter has repeatedly violated the Clean Air Act, South Carolina State Implementation Plan (SIP), South Carolina Title V program requirements, and permit requirements as to emissions limits from various sources at the Facility, including limits for particulate matter, total fluorides, and the sulfur content of coke used in the Facility's anodes. Mt. Holly Smelter has also violated Clean Air Act and South Carolina SIP prevention of significant deterioration (PSD) requirements by making a major modification without a valid PSD permit.

We briefly identify each of the relevant Title V and construction permits as background here.

Construction Permits Including PSD Permits

On November 19, 2002, the South Carolina Department of Health and Environmental Control (SCDHEC)[2] issued Construction Permit 0420-0015-CR to Alcoa Mt. Holly, operating as Alumax of South Carolina (hereinafter, the "2002 Construction Permit"). As discussed in more detail

[2] In 2024, the SCDHEC became two separate agencies: the South Carolina Department of Environmental Services (SCDES) and South Carolina Department of Public Health (DPH). Issues related to air pollution regulation went to SCDES.

herein, the 2002 Construction Permit included limitations on the sulfur content of the petroleum coke used to form anodes. In addition, the 2002 Construction Permit included Best Available Control Technology (BACT) limits on PM and TF pursuant to S.C. Regulation 61-62.5, Standard No. 7.

On January 3, 2008, SCDHEC issued Construction Permit 0420-0015-CU to Alumax of South Carolina, Inc. (Alcoa-Mt. Holly) (hereinafter, the "2008 Construction Permit"). The 2008 Construction Permit included limitations on the sulfur content of the petroleum coke used to form anodes.

On January 12, 2023, SCDHEC issued PSD Construction Permit No. 0420-0015-CY (hereinafter, the "2023 PSD Permit"), which purported to "revise the existing PM (filterable) BACT emission limit for the Unit ID 04 potline dry scrubber/dust collector and roof monitor sets."[3] As described below and in Sierra Club's later comments to SCDHEC, the public notice for the permit was deficient and therefore the 2023 PSD Permit is invalid.

Part 70 Operating Permits

On January 30, 2003, SCDHEC issued a revised Part 70 Air Quality permit TV-0420-0015 that incorporated the 2002 Construction Permit, including the PM and TF emission limits and the limits on the sulfur content of coke used to form the anodes (hereinafter, the "2003 revised Title V Permit").

On June 23, 2021, SCDHEC renewed the Title V Permit TV-0420-0015 to Century Aluminum, effective July 1, 2021, and expiring June 30, 2026 (hereinafter, the "2021 Title V Permit"). The 2021 Title V Permit incorporated the PM and TF emission limits and the limits on the sulfur content of coke used to form the anodes from the 2002 and 2008 Construction Permits.

On April 13, 2023, SCDHEC purported to amend the 2021 Title V Permit to incorporate the changes to the plant's allowable percentage sulfur content of coke and PM BACT limits for the potlines, as follows:

First, SCDHEC purported to adopt, via a Title V minor permit modification, a condition that would allow the Mt. Holly Smelter to use blended coke with monthly average sulfur content not to exceed 3.0% by weight. On November 2, 2023, EPA objected to SCDHEC's change to this limit, however, because the permit change was not eligible for processing as a minor permit modification.[4] Thus, the 2023 revised Title V permit changing the coke sulfur content limit in Mt. Holly's Title V permit was invalid (hereinafter, the "invalid 2023 Title V Permit").

---

[3] *See* 2023 PSD Permit at p. 3, "Project Description."

[4] *See In the Matter of Century Aluminum of South Carolina, Inc.*, EPA Order on Petition No. IV-2023-09, at pp. 11-16 (Nov. 2, 2023) (objecting to SCDHEC's proposed minor permit modification to Mt. Holly's Title V permit regarding the sulfur content of the coke used at Mt.

Also in the April 2023 Title V permit action, SCDHEC attempted to administratively amend the 2021 Title V permit to incorporate the terms of the 2023 PSD Permit. In its November 2, 2023 Order, EPA also objected to this action, finding the 2023 PSD Permit changes were not eligible to be incorporated into the Title V permit via an administrative amendment because the 2023 PSD Permit public notice did not satisfy Part 70 requirements.[5] Thus, the 2023 revised Title V Permit and 2023 PSD Permit changes were both invalid.

The EPA objections to Mt. Holly Smelter's 2023 permit changes have not yet been adequately remedied by SCDHEC. Thus, it is Sierra Club's position that the 2023 permit changes remain invalid and ineffective.

Citizen enforcement of the Clean Air Act and permits

The Clean Air Act empowers citizens to enforce violations of emission standards or limitations, 42 U.S.C. § 7604(a)(1)(A), defined as including an "emission limitation, standard of performance or emission standard," "any condition or requirement of a [PSD] permit," and "any other standard, limitation, or schedule established under any permit issued pursuant to subchapter V or under any applicable State implementation plan approved by the Administrator, any permit term or condition, and any requirement to obtain a permit as a condition of operations," 42 U.S.C. § 7604(f)(1), (3) & (4).

The Clean Air Act also empowers citizens to sue any person who constructs or modifies a major source without a PSD permit or who has repeatedly violated, or is in violation of, any condition of a PSD permit. 42 U.S.C. § 7604(a)(3).

42 U.S.C. § 7661a(a) provides that no stationary source subject to Title V may operate except in compliance with a Title V and/or PSD permit: "After the effective date of any permit program approved or promulgated under this subchapter, it shall be unlawful for any person to violate any requirement of a permit issued under this subchapter, or to operate . . . a major source, . . . [or] any other source required to have a permit under part[] C . . . of subchapter I, . . . except in compliance with a permit issued by a permitting authority under this subchapter." *Id.* In addition, S.C. Reg. 61-62.70.6(a)(1)(6)(i) requires the permittee to comply with all Part 70 permit conditions.[6]

As described more fully below, at the Mt. Holly Smelter, you have violated, and continue to violate, the following emissions standards or limitations:

---

Holly), available at https://www.epa.gov/system/files/documents/2023-11/century-aluminum-order_11-02-2023.pdf.

[5] *See id.* at pp. 21-22 (objecting to SCDES's proposed administrative amendment to Mt. Holly's Title V permit regarding the PM BACT limits at Mt. Holly).

[6] EPA authorized South Carolina's Title V program in 1995. *See* 60 Fed. Reg. 32,913-32,916 (June 26, 1995) (effective July 26, 1995); 40 C.F.R. Part 70, Appendix A.

(a) PM and TF limitations in its
   1. Title V operating permit TV-0420-0015 (the 2003, 2021, and invalid 2023 versions),
   2. Construction Permit 0420-0015-CR (2002 Construction Permit),
   3. PSD Permit 0420-0015-CY (invalid 2023 PSD Permit), and
   4. 40 C.F.R. Part 63, Subpart LL;[7] and

(b) Limitations on the sulfur content in coke prescribed in its
   1. Title V operating permit TV-0420-0015 (2003 and 2021 versions),
   2. Construction Permit 0420-0015-CR (2002 Construction Permit), and
   3. Construction Permit 0420-0015-CU (2008 Construction Permit).

In addition, at the Mt. Holly Smelter, you are violating the PSD requirements of the Clean Air Act and the South Carolina SIP,[8] the South Carolina Part 70 permit requirements, and 2021 Title V permit TV-0420-0015, by making a major modification to the Facility by requesting to use up to 3.0% sulfur content in blended coke based on a monthly average and/or by using coke with higher monthly average sulfur content than 2.22% without a valid PSD permit, including operating without meeting BACT for $SO_2$ and $PM_{2.5}$ emissions, and operating without a valid Part 70 permit revision.[9]

Alternatively, if SCDHEC's April 2023 minor permit modification to Century's 2021 Title V Permit increasing the 2.22% coke sulfur content limit to 3.0% is considered to be valid, despite EPA's November 2, 2023 Order objecting, then at the Mt. Holly Smelter, you are violating the

---

[7] 40 C.F.R. Part 63, Subpart LL emission limits for TF and PM for primary aluminum reduction plants apply to Mt. Holly Smelter's potlines and anode bake furnaces. As relevant here, Subpart LL requirements "apply to the owner or operator of each new or existing . . . potline . . . and anode bake furnace associated with primary aluminum production and located at a major source as defined in § 63.2." 40 C.F.R. § 63.840(a). Mt. Holly Smelter is a major source, because it is a stationary source or group of stationary sources located within a contiguous area and under common control that emits or has the potential to emit, considering controls, in the aggregate, 10 tons per year or more of any hazardous air pollutant (HAP) or 25 tons per year or more of any combination of HAPs. *See* 40 C.F.R. § 63.2 (definition of major source); *see also* 2021 Title V Permit at p. 3, Section A, Emission Unit IDs 02 (baked carbon plant) and 04 (Potlines) (indicating that 40 CFR 63 Subpart LL applies to these emissions units).

[8] EPA has also approved South Carolina's PSD regulations, at S.C. Reg. 61-62.5, Standard No. 7, into the federally approved SIP. *See* 40 C.F.R. § 52.2120(c).

[9] Mt. Holly Smelter undertook this change to the monthly average sulfur content of coke used at the Facility after applying for a Title V minor permit modification. SCDHEC's change to this limit is invalid, however, because the minor permit modification violated Title V requirements. *See In the Matter of Century Aluminum of South Carolina, Inc.*, EPA Order on Petition No. IV-2023-09, at pp. 11-16 (Nov. 2, 2023), available at https://www.epa.gov/system/files/documents/2023-11/century-aluminum-order_11-02-2023.pdf.

PSD requirements of the South Carolina SIP at S.C. Regulation 61-62.5, Standard No. 7, Section (R)(4) including, but not limited to, the requirement of Standard No. 7, Section (J)(3) to apply BACT for $SO_2$. You are also violating the Part 70 permit requirements by operating without a valid Part 70 permit revision addressing these PSD requirements of the South Carolina SIP.

At the Mt. Holly Smelter, you are also violating the PSD requirements of the Clean Air Act and the South Carolina SIP, the South Carolina Part 70 permit requirements, and 2021 Title V permit TV-0420-0015 by commencing physical and/or operational changes that resulted in a major modification for PM, $PM_{10}$, and $PM_{2.5}$ on or about January 12, 2023 without a valid PSD permit, including operating without meeting BACT for PM, $PM_{10}$, and $PM_{2.5}$ emissions and operating without a valid Part 70 permit revision.

Finally, because you have not and are not operating the Mt. Holly Smelter in a manner consistent with safety and good air pollution control practices for minimizing emissions, you have violated and are violating 40 C.F.R. § 63.843(f).

1. *Violations of PM Emissions Limits in Permit TV-0420-0015, Construction Permit 0420-0015-CR, Invalid PSD Construction Permit No. 0420-0015-CY, and 40 C.F.R. Part 63, Subpart LL, Section 843(c)(3)*

The Mt. Holly Smelter's 2002 Construction Permit and its Title V Permit limit PM emissions from the Facility's potlines and anode bake oven. *See generally* 2002 Construction Permit CR, Section II.A; 2003 revised Title V Permit Conditions 5.E & Part 5.0, Section D, Table 5.9; 2021 Title V Permit, Conditions C.16 and C.23.

In addition, 40 C.F.R. Part 63, Subpart LL limits PM emissions from each anode bake furnace. *See* 40 C.F.R. § 63.843(c)(3); *id.* § 63.842 (defining anode bake furnaces).

Mt. Holly Smelter reported[10] measurements of PM emissions which violated emissions limitations in its Construction Permit CR, Title V Permit, and 40 C.F.R. Part 63, Subpart LL for the following emissions points:

a. Potline #1 Ridge Vent East (Unit ID 04, Equipment ID 40101, Source ID 02A);
b. Potline #1 Ridge Vent West (Unit ID 04, Equipment ID 40102, Source ID 03A);
c. Potline #1 Scrubber Stack 161E (Unit ID 04, Equipment ID 70010A, Control Device 53002, Source ID 02);
d. Potline #1 Scrubber Stack 161W (Unit ID 04, Equipment ID 70010B, Control Device ID 53003, Source ID 03);
e. Potline #1 East Potroom Group Roof Vents and Scrubber Baghouse 161E (Unit ID 04, Equipment ID 40101 and 70010A, Control Device ID 53002, Source ID 02, 02A);

---

[10] Mt. Holly Smelter reported these violations to the SCDHEC BAQ Technical Management Section.

f. Potline #1 West Potroom Group Roof Vents and Scrubber Baghouse 161W (Unit ID 04, Equipment IDs 40402 and 70010B, Control Device 53003Source ID 03, 03A);
g. Potline #2 Ridge Vent West (Unit ID 04, Equipment ID 40104, Source ID 05A);
h. Potline #2 West Scrubber Stack 162W Unit ID 04, Equipment ID 70010D, Control Device 53005, Source ID 05;
i. Potline #2 West Potroom Group Roof Vents plus Scrubber Baghouse (Unit ID 04, Equipment IDs 40104 and 70010D, Control Device 53005, Source IDs 05, 05A); and
j. Anode Bake Furnace (Unit ID 02, Equipment ID 53001, Control Device ID 53001, Source ID 01)

The following table identifies, by emissions unit, the relevant emission limit exceeded, the dates and time periods of the violations, and the applicable permit or regulatory emission limit or standard. You are in violation of the identified emissions standards or limitations every hour and day between the approximate start dates and end dates of the emissions violations identified in this table. *See* 42 U.S.C. § 7413(e)(2) (describing penalty assessment and mandatory penalty criteria and establishing the presumption of continuous violation). Each of these violations is continuing because they have been repeated and are likely to recur.

| **Emission Unit** | **PM Limit Violated** | **Dates of Violations**[11] (on or about) | **Permit and/or Regulation Violated** |
|---|---|---|---|
| Potline #1 Ridge Vent East (Unit ID 04, Equipment ID 40101, Source ID 02A) | 18.15 lb/hr | January 7, 2019 – October 5, 2020 | 2002 Construction Permit (Section II.A.); 2003 Title V Permit (Conditions 5.E.1. & 5.D.Table 5-9); 2021 Title V Permit (Condition C.23) |
| | | March 2, 2021 – June 30, 2021 | |
| | | Each month from July 2021 through November 2021 | |
| | | Each month from December 2022 through March 2024 | |
| | | Each month from October 2024 to the present | |

[11] Note that these of violation dates correspond with stack testing and other public reporting that the Facility has provided to SCDES. Some dates may fall outside of the statute of limitations for Clean Air Act claims. In December 2024, Century Aluminum and Sierra Club entered into an agreement to toll the statute of limitations as to the claims in Sierra Club's previous (April 20, 2024) notice letter for period of one year, starting on November 9, 2024. Some claims in this table overlap with claims previously tolled.

| | | | |
|---|---|---|---|
| Potline #1 Ridge Vent West (Unit ID 04, Equipment ID 40102, Source ID 03A) | 18.15 lb/hr | January 7, 2019 – March 4, 2019 | 2002 Construction Permit (Section II.A.); 2003 Title V Permit (Conditions 5.E.1. & 5.D.Table 5-9); 2021 Title V Permit (Condition C.23) |
| | | February 3, 2020 – October 5, 2020 | |
| | | Each month from October 2021 through December 2022 | |
| | | Each month from March 2023 through March 2024 | |
| | | Each month from October 2024 to the present | |
| Potline #1 East Scrubber Stack 161E (Unit ID 04, Equipment ID 70010A, Control Device 53002, Source ID 02 | 1.5 lb/hr | January 7, 2019 – April 28, 2021 | 2002 Construction Permit (Section II.A.); 2003 Title V Permit (Conditions 5.E.1. & 5.D.Table 5-9); 2021 Title V Permit (Condition C.24) |
| Potline #1 West Scrubber Stack 161W (Unit ID 04, Equipment ID 70010B, Control Device ID 53003, Source ID 03) | 1.5 lb/hr | January 7, 2019 – March 4, 2021 | |
| | | February 28, 2023 – February 29, 2024 | |

| | | | |
|---|---|---|---|
| Potline #1 East Potroom Group Roof Vents 101G and Scrubber Baghouse 161E (Unit ID 04, Equipment ID 40101 and 70010A, Control Device ID 53002, Source ID 02, 02A | 19.65 lb/hr | January 7, 2019 – October 21, 2020 | 2002 Construction Permit (Condition II.D.18); 2003 Title V Permit (Condition 5.E.11) |
| | | March 2, 2021 – November 1, 2021 | |
| | | December 5, 2022 – March 4, 2024 | |
| | | October 7, 2024 – present | |
| Potline #1 West Potroom Group Roof Vents 101H and Scrubber Baghouse 161W (Unit ID 04, Equipment IDs 40402 and 70010B, Control Device 53003, Stack ID 03, 03A) | 19.65 lb/hr | January 7, 2019 – September 19, 2020 | 2002 Construction Permit (Condition II.D.18); 2003 Title V Permit (Condition 5.E.11) |
| | | October 4, 2021 – November 1, 2021 | |
| | | March 7, 2022 – December 5, 2022 | |
| | | March 6, 2023 – March 4, 2024 | |
| | | October 7, 2024 – present | |

| | | | |
|---|---|---|---|
| Potline #2 Ridge Vent West (Unit ID 04, Equipment ID 40104, Source ID 05A) | 18.15 lb/hr | Each month from May 2022 through April 2024<br>Each month from November 2024 to the present | 2002 Construction Permit (Section II.A.); 2021 Title V Permit (Condition C.23) |
| Potline #2 West Scrubber Stack 162W (Unit ID 04, Equipment ID 70010D, Source ID 05); | 1.5 lb/hr | March 23, 2023 – present | 2002 Construction Permit (Section II.A.); 2021 Title V Permit (Condition C.24) |
| Potline #2 West Potroom Group (Ridge Vents plus Scrubber Baghouse) (Unit ID 04, Equipment IDs 70010C and 70010D, Control Device 53005, Source ID 05, 05A) | 19.65 lb/hr | May 2, 2022 – present | 2002 Construction Permit (Condition II.D.18); 2003 Title V Permit (Condition 5.E.11) |
| Anode Bake Furnace (Unit ID 02, Equipment ID 53001, Control Device ID 53001, Source ID 01) | 4.91 lb/hr | September 24, 2019 – September 24, 2020 | 2002 Construction Permit (Section II.A.); 2003 Title V Permit (Conditions 5.E.1. & 5.D.Table 5-9) |
| Anode Bake Furnace (Unit ID 02, Equipment ID 53001, Control Device ID 53001, Source ID 01) | 0.20 lb/ton of green anodes processed | April 30, 2019 – September 24, 2020 | 40 C.F.R. §63.843(c)(3) |

The Mt. Holly Smelter has also violated the PM emission limits applicable under the invalid 2023 PSD permit for both potroom groups, as described in the following table, and these violations are likely to recur. To the extent Mt. Holly Smelter claims it can operate under the new PM BACT emission limits for the Unit ID 04 Potlines in the 2023 PSD Permit and 2023 revised Title V permit, those permits were not validly issued for the reasons stated in EPA's November 2023 Objection Order. Nonetheless, even if we assumed the limits under the 2023 PSD and Title V permits are valid (which we do not concede), Mt. Holly Smelter has also repeatedly violated the PM limits in the 2023 PSD and Title V permits for both potroom groups, as described in the following table.

| **Emission Unit** | **PM Limit Violated** | **Dates of Violations** (on or about) | **Permit and/or Regulation Violated** |
|---|---|---|---|
| Potline #1 East Potroom Group Roof Vents and Scrubber Baghouse 161E (Unit ID 04, Equipment ID 40101 and 70010A, Control Device ID 53002, Source ID 02, 02A | 28.73 lb/hr | Each month from October 2024 through February 2025 | Invalid 2023 PSD Permit (Condition 5);<br><br>Invalid 2023 Title V Permit (Condition C.23) |
| Potline #1 West Potroom Group Roof Vents and Scrubber Baghouse 161W (Unit ID 04, Equipment IDs 40402 and 70010B, Control Device 53003, Source ID 03, 03A | 28.73 lb/hr | Each month from October 2024 through February 2025 | |
| Potline #2 West Potroom Group (Ridge Vents plus Scrubber Baghouse) (Unit ID 04, Equipment IDs 70010C and 70010D, Control Device 53005, Stack ID 05, 05A) | 28.73 lb/hr | Each month from April 2024 through February 2025 | |

2. *Violations of TF Emissions Limits in the 2002 Construction Permit, Permit TV-0420-0015 and 40 C.F.R. Part 63, Subpart LL, Section 843(a)(1)(i)*

Mt. Holly Smelter's 2002 Construction Permit, its 2021 Title V Permit, and its 2023 Invalid Title V permit limit TF emissions from the Facility's potlines. *See* 2002 Construction Permit, Conditions II.A. and Condition D.11; 2003 revised Title V Permit, Condition D, Table 5.9; 2021 Title V Permit, Condition C.28; Invalid 2023 Title V Permit, Condition C.27.

In addition, 40 C.F.R. § 63.843(a)(1)(i) states that TF emissions shall not exceed 0.95 kg/Mg (1.9 lb/ton) of aluminum produced for each CWPB1 potline. *See* 40 C.F.R. § 63.843(a)(1)(i); *see also* 2002 Construction Permit, Condition II.D.11, and 2021 Title V Permit at PDF p. 61 (Attachment – Applicable and Non-Applicable Federal and Federal State Regulations, acknowledging applicability of 40 C.F.R. Part 63, Subpart LL). Mt. Holly Smelter operates two CWPB1 potlines. *See* 40 C.F.R. § 63.842.

Mt. Holly Smelter's 2021 Title V Permit, Condition E.4 as well as Invalid Title V Permit Condition E.4 requires the facility to comply with all requirements of 40 CFR 63, Subpart LL.

The following table identifies, by emissions unit, the relevant emission limit exceeded, the dates and time periods of the violations, and the applicable permit or regulatory emission limit or standard. You are in violation of the identified emissions standards or limitations every hour and day between the approximate start dates and end dates of the emissions violations identified in this table. Each of these violations is continuing because they have been repeated and are likely to recur.

<table>
<tr><th>Emission Unit</th><th>TF Limit Violated</th><th>Dates of Violations (on or about)</th><th>Permit and/or Regulation Violated</th></tr>
<tr><td>Potline #1 East and West Potroom Groups (Ridge Vent plus Scrubber Stack)</td><td>1.9 lb/ton of aluminum produced</td><td>March 2, 2021 – April 28, 2021</td><td>40 C.F.R. § 63.843(a)(1)(i)</td></tr>
<tr><td>Potline #1 East Potroom Group (Ridge Vent plus Scrubber Stack)</td><td>1.34 lb/ton aluminum produced (single month average)</td><td>March 2, 2021 – April 28, 2021</td><td>2002 Construction Permit (Conditions II.A. and II.D.11); 2003 Title V permit (Condition D, Table 5-9)</td></tr>
<tr><td>Potline #2 West Potroom Group (Ridge Vent plus Scrubber Stack)</td><td>1.9 lb/ton of aluminum produced</td><td>March 22, 2024 – September 19, 2024</td><td>40 C.F.R. § 63.843(a)(1)(i); 2002 Construction Permit (Condition II.D.11); Condition E.4 of the 2023 Invalid Title V Permit</td></tr>
<tr><td>Plantwide average; Emissions Unit ID04 (Potlines)</td><td>1.02 lb/ton aluminum produced (12-mo rolling average)</td><td>November 7, 2022 – June 30, 2025</td><td rowspan="4">2002 Construction Permit (Conditions II.A. and II.D.11); 2021 Title V Permit(Condition C.28); Invalid 2023 Permit TV-0420-0015 (Condition C.27)</td></tr>
<tr><td rowspan="3">Plantwide average; Emissions Unit ID04 (Potlines)</td><td rowspan="3">1.34 lb/ton aluminum produced (single month average)</td><td>October 2021 – December 2022</td></tr>
<tr><td>March 2023 – February 2024</td></tr>
<tr><td>June 2024 – August 2024</td></tr>
</table>

3. *Violations of the Limit on the Sulfur Content of Coke Used to Form Anodes in the 2002 Construction Permit, 2008 Construction Permit, and Title V Permit TV-0420-0015*

Mt. Holly Smelter's 2002 Construction Permit CR, Condition II. D.9; 2008 Construction Permit, Conditions II.A. and II.D.11; and 2021 Title V Permit, Condition C.15, all require that "the sulfur content of the coke used in forming the anodes shall not exceed 2.22% by weight based upon a monthly average."

From at least June 2023 through June 2025, Mt. Holly Smelter reported to SCDES a monthly average coke sulfur content well exceeding the 2.22% monthly average limit. Therefore, between at least June 1, 2023, and June 30, 2025, you have violated the 2.22% coke sulfur content

limitation imposed by Mt. Holly Smelter's 2002 Construction Permit, 2008 Construction Permit, and 2021 Title V permit.[12] Based on Mt. Holly Smelter's reporting to DES and consistent use of an average percentage of sulfur coke higher than 2.22% each month starting in June 2023, these violations are likely to have continued beyond June 2025 and to be continuing through the date of this notice.

4. *Violations of S.C. SIP Regulation 61-62.5, Standard No. 7; 42 U.S.C. § 7475(a)(1) & (a)(4); 42 USC 7661a(a); S.C. Regulation 61-62.70, Section 70.5(a)(1)(ii); and Title V Permit TV-0420-0015 due to the Change in Mt. Holly Smelter's Coke Sulfur Content*

    42 U.S.C. § 7475(a)(1) and (a)(4) provide, in pertinent part, that:

> No major emitting facility on which construction[13] is commenced after August 7, 1977, may be constructed in any area to which [Part C of the Clean Air Act] applies unless-
>
> (1) A permit has been issued for such proposed facility in accordance with this part setting forth emission limitations for such facility which conform to the requirements of this part;
> . . .
> (4) the proposed facility is subject to the best available control technology for each pollutant subject to regulation under this chapter emitted from, or which results from, such facility.

*Id.*

The federally enforceable S.C. Regulation 61-62.5, Standard No. 7 (PSD), section (A)(2)(c)[14] provides, in pertinent part, "[n]o new major stationary source or major modification to which the requirements of paragraphs (J) through (R)(5) apply shall begin actual construction without a

---

[12] As discussed above, you undertook this change after applying for and receiving a minor Title V permit modification to the Mt. Holly Title V permit in which SCDHEC adopted a condition that would allow the Mt. Holly Smelter to use blended coke with monthly average sulfur content not to exceed 3.0% by weight. But EPA has objected to this minor Title V permit modification, and SCDHEC's change to this limit and revised permit are therefore invalid. *See In the Matter of Century Aluminum of South Carolina, Inc.*, EPA Order on Petition No. IV-2023-09, at pp. 11-16, available at https://www.epa.gov/system/files/documents/2023-11/century-aluminum-order_11-02-2023.pdf.

[13] The term "construction" includes the modification of any source or facility, pursuant to 42 U.S.C. § 7479(2)(C). "Modification" is defined as "any physical change in, or change in the method of operation of, a stationary source which increases the amount of any air pollutant emitted by such source or which results in the emission of any air pollutant not previously emitted." 42 U.S.C. § 7411(a)(4).

[14] This regulation is part of the EPA-approved South Carolina SIP. *See* 40 C.F.R. § 52.2120(c).

permit that states that the major stationary source or major modification will meet those requirements." S.C. Regulation 61-62.5, Standard No. 7, section (A)(2)(b) states that "the requirements of paragraphs (J) through (R) [of Standard No. 7] apply to the . . . major modification of any existing major stationary source," except as otherwise provided.

A "major modification" is defined in S.C. Regulation 61-62.5, Standard No. 7, Section (B)(30)(a) as "any physical change in or change in the method of operation of a major stationary source that would result in a significant emissions increase (as defined in paragraph (B)(50) [of Standard No. 7, S.C. Regulation 61-62.5]) of a regulated [new source review (NSR)] pollutant increase (as defined in paragraph (B)(44) [of Standard No. 7, S.C. Regulation 61-62.5]); and a significant net emissions increase of that pollutant from the major stationary source."

S.C. Regulation 61-62.5, Standard No. 7, Section (B)(50) defines "significant emissions increase" as "for a regulated NSR pollutant, an increase in emissions that is significant as defined in paragraph (B)(49) [of Standard No. 7, S.C. Regulation 61-62.5]) for that pollutant." S.C. Regulation 61-62.5, Standard No. 7, Section (B)(49) defines "significant" as a rate of emissions that would equal or exceed 40 tons per year for $SO_2$ and 40 tons per year of $SO_2$ for particulate matter. S.C. Regulation 61-62.5, Standard No. 7, Section (B)(44)(a)(ii)(2) defines regulated NSR pollutant as including, in pertinent part, $SO_2$ as "a precursor to $PM_{2.5}$ in all attainment and unclassifiable areas" and Section (B)(44)(a)(i) also states that "condensable particulate matter shall be accounted for in applicability determinations and in establishing emissions limitations for $PM_{2.5}$ and $PM_{10}$ in PSD permits."

Further, S.C. Regulation 61-62.5, Standard No. 7, Section (J)(3) provides that "[a] major modification shall apply BACT for each regulated NSR pollutant for which it would result in a significant net emissions increase at the source. This requirement applies to each proposed emissions unit at which a net emissions increase in the pollutant would occur as a result of the physical change or change in the method of operation of the unit." All of these provisions are part of the EPA-approved South Carolina SIP. *See* 40 C.F.R. § 52.2120(c).

42 U.S.C. § 7661a(a) makes it unlawful for a person to violate a condition of a Title V permit or to operate a source in violation of a Title V permit:

> After the effective date of any permit program approved or promulgated under this subchapter, it shall be unlawful for any person to violate any requirement of a permit issued under this subchapter, or to operate . . . a major source, . . . [or] any other source required to have a permit under part[] C . . . of subchapter I, . . . except in compliance with a permit issued by a permitting authority under this subchapter.

*Id.* Consistent with 42 U.S.C. § 7661a(a), S.C. Regulation 61-62.70, § 70.5(a)(1)(ii), states:

> Part 70 sources required . . . to have a permit under the preconstruction review program approved into the South Carolina Implementation Plan under Part C or D of Title I of the Act, shall file a complete application to obtain the Part 70 permit

> or permit revision within 12 months after commencing operation or on or before such earlier date as the permitting authority may establish. *Where an existing Part 70 permit would prohibit such construction or change in operation, the source must obtain a permit revision before commencing operation.*

*Id.* (emphasis added).[15] Mt. Holly's 2021 Title V Permit Condition M.9 also prohibits noncompliance with the Title V permit:

> The permittee must comply with all conditions of the Part 70 permit. Any permit noncompliance constitutes a violation of the South Carolina Pollution Control Act and/or the Clean Air Act and is grounds for enforcement action; for permit termination, revocation and reissuance, or modification; or for denial of a permit renewal application.

2021 Title V Permit at M.9 (citing S.C. Regulation 61-62.70, § 70.6(a)(6)(i)).

In January 2023, the Mt. Holly Smelter submitted a Form 2949 "Minor Permit Modification" and a Form 2942 "Facility Wide Raw Materials and Products" to SCDHEC, in which it proposed new language for Title V permit Condition C.15 that would allow use of blended coke with monthly average sulfur content of up to 3.0%. Condition C.15 of Mt. Holly's 2021 Title V permit does not allow the use of coke with sulfur content higher than 2.22%. Beginning on or about June 2023, Mt. Holly Smelter undertook a change in the method of operation at the plant to utilize coke with a higher monthly average sulfur content than 2.22%.

This change in the method of operation at the Mt. Holly Smelter plant would result in a significant emission increase and a significant net emissions increase of $SO_2$ and of $PM_{2.5}$, due to $SO_2$ being a precursor to $PM_{2.5}$. But the Mt. Holly Smelter did not properly apply or obtain approval prior to commencing this modification or operating thereafter.

42 U.S.C. § 7604(a)(1)(A) and (a)(3) allow Sierra Club to commence an action for violation of an emission standard or limitation and for modification of a major emitting facility without a permit required under part C of subchapter I (PSD).

You have committed and are committing the following violations:

a. With respect to $SO_2$ and $PM_{2.5}$, you violated and are continuing to violate S.C. Regulation 61-62.5, Standard No. 7, Section (A)(2)(c), by making a major modification at the Mt. Holly Smelter plant beginning on or about June 1, 2023, without obtaining a permit issued that meets the requirements of paragraphs (J) through (R) of S.C. Regulation 61-62.5, Standard No. 7. These requirements include S.C. Regulation 61-62.5, Standard No. 7, Section (J)(3), which requires that the major modification apply BACT for $SO_2$, $PM_{2.5}$, and also for $PM_{10}$. Each day that the Mt. Holly Smelter operated starting June 1, 2023,

[15] This rule implements the federal operating permit requirement in 40 C.F.R. § 70.5(a)(1)(ii).

without a permit issued under S.C. Regulation 62-62.5, Standard No. 7, and without complying with BACT emission limits for $SO_2$, $PM_{2.5}$, and $PM_{10}$ constitutes a separate violation.

b. With respect to $SO_2$ and $PM_{2.5}$, you violated and are continuing to violate 42 U.S.C. § 7475(a) by making a major modification at the Mt. Holly Smelter plant beginning on or about June 1, 2023, without obtaining a permit issued for the plant in accordance with Part C of Title I of the Clean Air Act that sets forth emission limitations, including BACT emission limitations (as required by 42 U.S.C. § 7475(a)(4)) for the Facility. Starting June 1, 2023, each day that the Mt. Holly Smelter plant operated without a permit issued pursuant to 42 U.S.C. § 7475(a) that specifies emission limitations reflective of BACT for the major modification constitutes a separate violation.

c. In addition, because, after you made the major modification discussed above, you began operating the Mt. Holly Smelter without applying for and procuring a valid Title V permit that would have incorporated requirements from a permit issued under Part C of subchapter I of the Clean Air Act, each day of such operation has been and continues to be a violation of 42 U.S.C. § 7661a(a) and South Carolina's EPA-approved Part 70 Program at S.C. Regulation 61-62.70, Section 70.5(a)(1)(ii). On June 1, 2023, Mt. Holly Smelter plant made a change in operations to utilize coke with a higher monthly average sulfur content than 2.22% that constituted a major modification for a $SO_2$ and $PM_{2.5}$ and commenced operation without a validly issued Part 70 permit revision.

d. In addition, because Mt. Holly's 2021 Title V permit Condition C.15 prohibited this change in operation, you violated and are continuing to violate S.C. Regulation 61-62.70, Section 70.5(a)(1)(ii) and Mt. Holly's 2021 Title V Permit Condition M.9, which prohibits noncompliance with Part 70 permit terms.

5. *Violation of Source PSD Obligations at S.C. Regulation 61-62.5, Standard No. 7(R)(4); and S.C. Regulation 61-62.70, Section 70.5(a)(1)(ii)*

Alternatively, if SCDHEC's April 13, 2023 Title V minor permit modification (Permit TV-0420-0015, v1.1) that increased the 2.22% coke sulfur content limit to 3.0% is considered to be valid––despite the EPA's November 2, 2023 Order objecting to the permit modification—then this relaxation on the limitation on coke sulfur content allowed the modification at the Mt. Holly Smelter, originally permitted in the 2002 Construction Permit, to become a major modification for $SO_2$.[16]

[16] The 2008 Construction Permit, *see* Condition D.11, also made clear that the coke sulfur content limit was a PSD "avoidance" limit" taken "in order to remain synthetic minor for" PSD.

42 U.S.C. § 7475(a)(1) provides, in pertinent part, that:

> No major emitting facility on which construction[17] is commenced after August 7, 1977, may be constructed in any area to which [Part C of the Clean Air Act] applies unless—
>
> (1) A permit has been issued for such proposed facility in accordance with this part setting forth emission limitations for such facility which conform to the requirements of this part[.]

S.C. Regulation 61-62.5, Standard No. 7, Section (A)(2)(b) & (c) state, in relevant part:

> (b) The requirements of paragraphs (J) through (R) apply to the construction of any new major stationary source or the major modification of any existing major stationary source, except as this section otherwise provides.
>
> (c) No new major stationary source or major modification to which the requirements of paragraphs (J) through (R)(5) apply shall begin actual construction without a permit that states that the major stationary source or major modification will meet those requirements.

S.C. Regulation 61-62.5, Standard No. 7, Section (R)(4) of the South Carolina SIP provides that:

> At such time that a particular source or modification becomes a major stationary source or major modification solely by virtue of a relaxation in any enforceable limitation which was established after August 7, 1980, on the capacity of the source or modification to otherwise emit a pollutant, such as a restriction on hours of operation, then the requirements of paragraphs (J) through (R) [of Standard No. 7] apply to the source or modification as though construction had not yet commenced on the source or modification.

*Id.*

S.C. Regulation 61-62.70, Section 70.5(a)(1)(ii), states:

> Part 70 sources required . . . to have a permit under the preconstruction review program approved into the South Carolina Implementation Plan under Part C or D of Title I of the Act, shall file a complete application to obtain the Part 70 permit or permit revision within 12 months after commencing operation or on or before such earlier date as the permitting authority may establish. Where an existing Part 70 permit would prohibit such construction or change in operation, the source must obtain a permit revision before commencing operation.

---

[17] The terms "construction" and "modification" are defined as set forth in footnote 10, *supra*.

*Id.* (emphasis added).

These standards were triggered as follows: In 2001, Mt. Holly Smelter (operating as Alcoa) sought to increase allowable production from 234,274 tons per year of aluminum to 256,150 tons per year of aluminum, as well as operating flexibility to allow operation at higher rates (i.e., more than 256,150 TPY), as long as no emission limits were exceeded.[18] To minimize the "PSD net increase" in $SO_2$ emissions associated with this change, Mt. Holly Smelter accepted a permit restriction that lowered the average allowable sulfur content in the coke and pitch used at the Facility; in particular, the restriction lowered the average allowable sulfur content in the coke used at the Facility to 2.22%. *See* 2002 Construction Permit, Condition II. D.9. But for that restriction, the operation of the Mt. Holly Smelter potlines at the increased aluminum production rate using anodes formed with sulfur coke having a sulfur content above a 2.22% monthly average sulfur content would have resulted in a significant net emissions increase in $SO_2$ emissions and would have constituted a major modification for $SO_2$ subject to PSD permitting. Mt. Holly Smelter commenced operation at the higher production rate and with this limit on or about November 19, 2002, when the 2002 Construction Permit issued for this change.

If SCDHEC's April 13, 2023, Title V minor permit modification (Permit TV-0420-0015, v1.1) validly increased the 2.22% coke sulfur content limit to 3.0%, thereby removing the only limit that kept Mt. Holly Smelter's 2002 change in the method of operation a minor modification, then the Facility's proposed increase in allowable production in 2002 resulted in a major modification for $SO_2$ emissions requiring a PSD permit. Thus, as of April 13, 2023, Mt. Holly Smelter was required to comply with the requirements of paragraphs (J)–(R) of S.C. Regulation 61-62.5, Standard No. 7 as though construction had not yet commenced on the 2002 modification. Those requirements include all of the requirements that must be met to be issued a permit under S.C. Regulation 61-62.5, Standard No. 7, including S.C. Regulation 61-62.5, Standard No. 7, Section (J)(3), which requires that the major modification apply BACT for $SO_2$.

As such, each day that the Mt. Holly Smelter plant operated beginning April 13, 2023 without meeting the requirements of paragraphs (J)–(R) of S.C. Regulation 61-62.5, Standard No. 7, including the requirement in paragraph (J)(3) to apply BACT for $SO_2$, Mt. Holly Smelter has violated and continues to violate 42 U.S.C. § 7475(a)(1) (obligation to secure a PSD permit before making a major modification), S.C. Regulation 61-62.5, Standard No. 7, Section (A)(2)(c) (same), S.C. Regulation 61-62.5, Standard No. 7, Section (R)(4), including, but not limited to, the requirement of Standard 7(J)(3) to apply BACT for $SO_2$, 42 U.S.C. § 7661a(a) (requiring owner or operator to procure a Title V permit that would have incorporated requirements from a permit issued under Part C of subchapter I of the Clean Air Act, and to operate in compliance with the Title V permit), and S.C. Regulation 61-62.70, Section 70.5(a)(1)(ii) (requiring a Part 70 permit revision before commencing operation where the Part 70 permit would prohibit such construction or change in operation).

---

[18] *See* Summary, Alcoa - Mt Holly, NSR Assessment & PSD Permit Needs for Next Production Increase (August 2001).

6. *Violations of 42 U.S.C. § 7475(a)(1) & (4); S.C. SIP Regulation 61-62.5, Standard No. 7, Section (A)(2)(c) & (d); 42 U.S.C. § 7661a(a); S.C. Regulation 61-62.70, Section 70.5(a)(1)(ii); and Title V Permit TV-0420-0015, due to the Physical and/or Operational Changes that Occurred Upon the Issuance of the 2023 PSD Permit*

42 U.S.C. § 7475(a)(1) and (4) provide that:

> No major emitting facility on which construction[19] is commenced after August 7, 1977, may be constructed in any area to which [Part C of the Clean Air Act] applies unless-
>
> (1) a permit has been issued for such proposed facility in accordance with this part setting forth emission limitations for such facility which conform to the requirements of this part;
>
> . . .
>
> (4) the proposed facility is subject to the best available control technology for each pollutant subject to regulation under this chapter emitted from, or which results from, such facility[.]

S.C. SIP Regulation 61-62.5, Standard No. 7, Section (A)(2)(c) provides, in pertinent part, "[n]o new major stationary source or major modification to which the requirements of paragraphs (J) through (R)(5) apply shall begin actual construction without a permit that states that the major stationary source or major modification will meet those requirements." S.C. SIP Regulation 61-62.5, Standard No. 7, section (A)(2)(b) states that "the requirements of paragraphs (J) through (R) [of Standard No. 7] apply to the . . . major modification of any existing major stationary source," except as otherwise provided.

A "major modification" is defined in S.C. SIP Regulation 61-62.5, Standard No. 7, Section (B)(30)(a) as "any physical change in or change in the method of operation of a major stationary source that would result in a significant emissions increase (as defined in paragraph (B)(50) [of Standard No. 7, S.C. Regulation 61-62.5]) of a regulated [new source review (NSR)] pollutant increase (as defined in paragraph (B)(44) [of Standard No. 7, S.C. Regulation 61-62.5]); and a significant net emissions increase of that pollutant from the major stationary source."

S.C. SIP Regulation 61-62.5, Standard No. 7, Section (B)(50) defines "significant emissions increase" as "for a regulated NSR pollutant, an increase in emissions that is significant as defined in paragraph (B)(49) [of Standard No. 7, S.C. Regulation 61-62.5]) for that pollutant." S.C. Regulation 61-62.5, Standard No. 7, Section (B)(49) defines "significant" as a rate of emissions that would equal or exceed 25 tons per year of particulate matter (PM), 15 tons per year of $PM_{10}$ emissions, and 10 tons per year of Direct $PM_{2.5}$ emissions.

---

[19] The terms "construction" and "modification" are defined as set forth in footnote 10, *supra*.

Further, S.C. SIP Regulation 61-62.5, Standard No. 7, Section (J)(3) provides that "[a] major modification shall apply BACT for each regulated NSR pollutant for which it would result in a significant net emissions increase at the source. This requirement applies to each proposed emissions unit at which a net emissions increase in the pollutant would occur as a result of the physical change or change in the method of operation of the unit." All of these provisions are part of the EPA-approved South Carolina SIP. *See* 40 C.F.R. § 52.2120(c).

42 U.S.C. § 7661a(a) makes it unlawful for a person to violate a condition of a Title V permit or to operate a source in violation of a Title V permit:

After the effective date of any permit program approved or promulgated under this subchapter, it shall be unlawful for any person to violate any requirement of a permit issued under this subchapter, or to operate . . . a major source, . . . [or] any other source required to have a permit under part[] C . . . of subchapter I, . . . except in compliance with a permit issued by a permitting authority under this subchapter.

*Id.* Consistent with 42 U.S.C. § 7661a(a), S.C. Regulation 61-62.70, Section 70.5(a)(1)(ii), states:

> Part 70 sources required . . . to have a permit under the preconstruction review program approved into the South Carolina Implementation Plan under Part C or D of Title I of the Act, shall file a complete application to obtain the Part 70 permit or permit revision within 12 months after commencing operation or on or before such earlier date as the permitting authority may establish. *Where an existing Part 70 permit would prohibit such construction or change in operation, the source must obtain a permit revision before commencing operation.*

*Id.* (emphasis added). Mt. Holly's 2021 Title V Permit Condition M.9 also prohibits noncompliance with the Title V permit:

> The permittee must comply with all conditions of the Part 70 permit. Any permit noncompliance constitutes a violation of the South Carolina Pollution Control Act and/or the Clean Air Act and is grounds for enforcement action; for permit termination, revocation and reissuance, or modification; or for denial of a permit renewal application.

2021 Title V Permit at M.9 (citing S.C. Regulation 61-62.70, § 70.6(a)(6)(i)). Condition C.23 of the 2021 Title V Permit requires that the Mt. Holly plant not emit PM from Equipment ID 40101, 40102, and 40104 in excess of 18.15 lb/hr. Condition C.24 of the 2021 Title V Permit requires that the Mt. Holly plant not emit PM from Equipment ID 53002, 53003, 53004, and 53005 in excess of 1.5 lb/hr.

On January 12, 2023, SCDHEC issued PSD Construction Permit No. 0420-0015-CY (Invalid 2023 PSD Permit) to Mt. Holly Smelter which purported to replace separate PM emission limits that applied to each of the potroom roof monitors and the dry scrubber/ baghouse stacks with a combined and higher PM limit for each potroom roof monitor and dry scrubber/baghouse set.[20] With the revised limits, the plant undertook physical changes and/or changes in the method of operation at the potlines including operation with inferior air pollution control practices, and those changes resulted in significant emission increases and significant net emissions increases of PM, $PM_{10}$, and $PM_{2.5}$. The Mt. Holly Smelter undertook physical changes and/or operational changes at the potroom roof monitors and dry scrubber/baghouse sets that violated the terms of the 2021 Title V Permit including Conditions C23, C.24, and M.9.

42 U.S.C. § 7604(a)(1)(A) and (a)(3) allow Sierra Club to commence an action for violation of an emission standard or limitation and for modification of a major emitting facility without a PSD permit.

With respect to PM, $PM_{10}$, and $PM_{2.5}$, beginning on or about January 12, 2023, you violated and are continuing to violate S.C. SIP Regulation 61-62.5, Standard No. 7, Section (A)(2)(c) & (d), by making a physical change and/or changes in the method of operation at the Mt. Holly Smelter, including changes in the method of operation at the potlines including operation with inferior air pollution control practices, without obtaining a PSD permit that meets the requirements of paragraphs (J) through (R) of S.C. Regulation 61-62.5, Standard No. 7. These requirements include S.C. SIP Regulation 61-62.5, Standard No. 7, Section (J)(3), which requires that the plant apply BACT for PM, $PM_{10}$, and $PM_{2.5}$. Each day that Mt. Holly Smelter operated starting on or about January 12, 2023, without a permit issued under S.C. Regulation 62-62.5, Standard No. 7, and without complying with BACT emission limits for emissions of PM, $PM_{10}$, and $PM_{2.5}$, constitutes a separate violation.

In addition, because, after you made the major modification discussed above, you began operating the Mt. Holly Smelter without applying for and procuring a valid Title V permit that would have incorporated requirements from a permit issued under Part C of subchapter I of the Clean Air Act, each day of such operation has been and continues to be a violation of 42 U.S.C. § 7661a(a) and South Carolina's EPA-approved Part 70 Program at S.C. Regulation 61-62.70, Section 70.5(a)(1)(ii). On or about January 12, 2023, the Mt. Holly Smelter plant made physical changes and/or changes in the method of operation at the potlines including operation with inferior air pollution control practices, that constituted a major modification for PM, $PM_{10}$, and $PM_{2.5}$ and commenced operation without a validly issued Part 70 permit revision. In addition, because Mt. Holly's 2021 Title V permit Conditions C.23 and C.24 prohibited these physical changes and/or change in the method of operations, you violated and are continuing to violate S.C. Regulation 61-62.70, Section 70.5(a)(1)(ii) and Mt. Holly's 2021 Title V permit Condition M.9, which prohibits noncompliance with Part 70 permit terms.

---

[20] *See* SCDES, Prevention of Significant Deterioration Final Determination, Century Aluminum of South Carolina, Inc. – Mt. Holly Smelter, Permit No. 0420-0015-CY, January 12, 2023. at p. 3, "Project Description."

7. *Violations of Good Air Pollution Control Requirements Required by 40 C.F.R. § 63.843(f)*

From at least February 1, 2021, you have operated Emission Units #04 at the Mt. Holly Smelter in a manner inconsistent with safety and good air pollution control practices for minimizing emissions, as required by 40 C.F.R. § 63.843(f). Such actions include, but are not limited to:

- Failing to operate four fans for pot exhaust removal;
- Failing to establish a method (e.g. algorithm) for calculating monthly PM emissions from the potline roof vents (Emission Unit ID 04, Equipment ID 40101, 40102, 40103 and 40104);
- Failing to respond to each potroom baghouse bag leak detector alarm (Unit ID 04 control Devices 53002, 53003, 53004, and 53005) to initiate corrective action on individual baghouse compartments in order to prevent or minimize the frequency of visible emissions events at the baghouse stack exits (Sources 02, 03, 04 and 05);
- Failing to maintain a record of all potroom baghouse compartment bag leak detector alarms and corrective action responses;
- Failing to verify that the bag leak detectors installed at the baghouse stacks conform to the requirements of 40 C.F.R. § 63.848(o)(1) and (2);
- Failing to establish a baghouse pressure drop range for each baghouse compartment that provides a reasonable assurance of compliance with PM emission limits and opacity limits for control devices 53002, 53003, 53004 and 53005;
- Failing to ensure the potline baghouse pressure drop gauges are capable of delivering alarm signals that alert operators when an individual compartment’s pressure drop deviates from the prescribed operating range;
- Having an inadequate baghouse filter testing program;
- Failing to maintain a historical record of bag failures including the bag locations (cell #, bag #) and date to identify areas within each cell/compartment that may be prone to more frequent failure;
- Failing to install, calibrate, certify, and operate PM Continuous Emission Monitoring Systems (PM CEMS);
- Having inadequate written plant operation and maintenance procedures;
- Inadequate employee training to reduce the frequency of pot hood removal, or opening of shields for crust management, bath chemistry and temperature control; and
- Failing to establish a record of pot hood opening date, time and duration with notation of the reason for the opening (anode replacement, bath control, crust management).

**B. The Person or Persons Responsible for the Alleged Violations**

The person or persons responsible for the alleged violations are the owners and operators of the Mt. Holly Smelter primary aluminum smelting facility located at 3575 Highway 52, Goose Creek, SC 29445, including Century Aluminum of South Carolina, Inc.; Scott Courtney, Environmental Manager, and Robert Quak, Plant Manager and Responsible Official for Century

Aluminum of South Carolina, Inc.; and Jesse E. Gary, President, Chief Executive Officer and Director, and John DeZee, Executive Vice President, General Counsel & Secretary, of Century Aluminum Co. in Chicago, IL.

**C. The Location of the Alleged Violations**

The location of the alleged violations is:

Century Aluminum of South Carolina, Inc.
3575 Highway 52
Goose Creek, SC 29445

**D. The Full Name and Address of the Person Giving the Notice**

The person giving this notice is:

Sierra Club
National Headquarters
2101 Webster Street, Suite 1300
Oakland, CA 94612
(415) 977-5500

**E. Conclusion**

This notice is given pursuant to 42 U.S.C. § 7604(b) and 40 C.F.R. Part 54. If the violations described herein are not corrected within sixty (60) days after receipt of this notice, the undersigned organizations intend to commence a civil action under section 304 of the Clean Air Act, 42 U.S.C. § 7604, to seek appropriate relief, including injunctive and declaratory relief, civil penalties, and attorney fees. We invite you to contact undersigned counsel within this 60-day period to discuss an early and prompt resolution of this matter. Additionally, if you believe any of the facts described above are in error or have any information indicating that you are not violating and have not violated the Clean Air Act, we urge you to contact us immediately.

Sincerely,

Lauren Megill Milton (Fed. ID No. 12272)
Benjamin D. Cunningham (Fed ID No. 11905)
P.O. Box 1380 | Pawleys Island, SC 29585
(843) 527-0078 | lauren@scelp.org | ben@scelp.org

Michelle Fein
50 W Broadway, Suite 333
PMB 49891
Salt Lake City, UT 84101
(435) 254-3837
michelle@fein.law

George E. Hays
P.O. Box 843
Bellevue, WA 98009
(415) 716-9159
georgehays@mindspring.com

Sanghyun Lee
Senior Attorney
Environmental Integrity Project
888 17th Street NW, Suite 810
Washington, DC 20006
(202) 263-4441
SLee@environmentalintegrity.org

Marta Darby
P.O. Box 61
Truckee, CA 96160
(503) 806-0774
darby.marta@gmail.com

*Counsel for Sierra Club*

Copies to (all via Certified Mail, Return Receipt Requested):

Lee Zeldin
Administrator, U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, DC 20460
Certified Mail # 7022 2410 0002 6723 7650

Kevin J. McOmber
Regional Administrator
U.S. Environmental Protection Agency, Region 4
61 Forsyth Street, SW
Atlanta, GA 30303
Certified Mail # 7011 2970 3432 4542

The Honorable Henry Dargan McMaster
Governor's Office, State House
1100 Gervais Street
Columbia, SC 29201
Certified Mail # 7022 2410 0002 6723 7667

Myra Reece, Director
S.C. Department of Environmental Services
2600 Bull Street
Columbia, SC 29201
Certified Mail # 7022 2410 0002 6723 7674

Corporation Service Company
Registered Agent for
Century Aluminum of South Carolina, Inc.
100 Coastal Drive, Suite 210
Charleston, SC 29492
Certified Mail # 7022 2410 0002 6723 7643

7022 2410 0002 6723 7674

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Columbia, SC 29201

| | |
|---|---|
| Certified Mail Fee | $5.30 |
| Extra Services & Fees (check box, add fee as appropriate) | $4.40 |
| ☐ Return Receipt (hardcopy) | $ $0.00 |
| ☐ Return Receipt (electronic) | $ $0.00 |
| ☐ Certified Mail Restricted Delivery | $ $0.00 |
| ☐ Adult Signature Required | $ $0.00 |
| ☐ Adult Signature Restricted Delivery | $ |
| Postage | $2.44 |
| Total Postage and Fees | $12.14 |

0192
33
Postmark Here
BEL-RED POST OFFICE
FEB 20 2026
BELLEVUE, WA 98009
02/20/2026

Sent To: Myra Reece, SCDES
Street and Apt. No., or PO Box No.: 2600 Bull St.
City, State, ZIP+4®: Columbia, SC 29201

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

7022 2410 0002 6723 7667

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Columbia, SC 29201

| | |
|---|---|
| Certified Mail Fee | $5.30 |
| Extra Services & Fees (check box, add fee as appropriate) | $4.40 |
| ☐ Return Receipt (hardcopy) | $ $0.00 |
| ☐ Return Receipt (electronic) | $ $0.00 |
| ☐ Certified Mail Restricted Delivery | $ $0.00 |
| ☐ Adult Signature Required | $ $0.00 |
| ☐ Adult Signature Restricted Delivery | $ |
| Postage | $2.44 |
| Total Postage and Fees | $12.14 |

0192
33
Postmark Here
BEL-RED POST OFFICE
FEB 20 2026
BELLEVUE, WA 98009
02/20/2026

Sent To: Gov. McMaster
Street and Apt. No., or PO Box No.: 1100 Gervais St.
City, State, ZIP+4®: Columbia, SC 29201

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

7022 2410 0002 6723 7643

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Charleston, SC 29492

| | |
|---|---|
| Certified Mail Fee | $5.30 |
| Extra Services & Fees (check box, add fee as appropriate) | $4.40 |
| ☐ Return Receipt (hardcopy) | $ $0.00 |
| ☐ Return Receipt (electronic) | $ $0.00 |
| ☐ Certified Mail Restricted Delivery | $ $0.00 |
| ☐ Adult Signature Required | $ $0.00 |
| ☐ Adult Signature Restricted Delivery | $ |
| Postage | $2.44 |
| Total Postage and Fees | $12.14 |

0192
33
Postmark Here
BEL-RED POST OFFICE
FEB 20 2026
BELLEVUE, WA 98009
02/20/2026

Sent To: Corp. Service Co
100 Coastal Dr. Ste 210
Street and Apt. No., or PO Box No.: Charleston, SC 29492
City, State, ZIP+4®

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

7011 2970 0004 3432 4542

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

Atlanta, GA 30303

| | |
|---|---|
| Postage | $ $5.30 |
| Certified Fee | $4.40 |
| Return Receipt Fee (Endorsement Required) | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| | $0.00 |
| | $2.44 |
| Total Postage & Fees | $ $12.14 |

0192
33
Postmark Here
BEL-RED POST OFFICE
FEB 20 2026
BELLEVUE, WA 98009
02/20/2026

Sent To: EPA Region 4
Street, Apt. No.; or PO Box No.: 61 Forsyth St. SW
City, State, ZIP+4: Atlanta, GA 30303

PS Form 3800, August 2006 See Reverse for Instructions

## U.S. Postal Service™ CERTIFIED MAIL® RECEIPT

*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

Washington, DC 20460

OFFICIAL USE

7022 2410 0002 6723 7650

| | |
|---|---|
| Certified Mail Fee | $5.30 |
| $ | $4.40 |
| Extra Services & Fees (check box, add fee as appropriate) | |
| ☐ Return Receipt (hardcopy) $ | $0.00 |
| ☐ Return Receipt (electronic) $ | $0.00 |
| ☐ Certified Mail Restricted Delivery $ | $0.00 |
| ☐ Adult Signature Required $ | $0.00 |
| ☐ Adult Signature Restricted Delivery $ | |
| Postage | $2.44 |
| $ | $12.14 |
| Total Postage and Fees | |
| $ | |

Postmark Here: BEL-RED POST OFFICE, BELLEVUE, WA 98009, FEB 20 2026; 0192; 33; 02/20/2026

Sent To: Lee Zeldin, US EPA

Street and Apt. No., or PO Box No.: 1200 Pennsylvania Ave NW

City, State, ZIP+4®: Washington DC 20460

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

## U.S. Postal Service™ CERTIFIED MAIL™ RECEIPT

*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

Goose Creek, SC 29445

OFFICIAL USE

7011 2970 0004 3432 4528

| | |
|---|---|
| Postage $ | $5.30 |
| | $4.40 |
| Certified Fee | $0.00 |
| Return Receipt Fee (Endorsement Required) | $0.00 |
| | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| | $3.56 |
| Total Postage & Fees $ | $13.26 |

Postmark Here: BEL-RED POST OFFICE, BELLEVUE, WA 98009, FEB 20 2026; 0192; 33; 02/20/2026

Sent To: Century Aluminum of South Carolina

Street, Apt. No.; or PO Box No.: P.O. Box 1000

City, State, ZIP+4: Goose Creek, SC 29445

PS Form 3800, August 2006 See Reverse for Instructions

## U.S. Postal Service™ CERTIFIED MAIL™ RECEIPT

*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

Chicago, IL 60606

OFFICIAL USE

7011 2970 0004 3432 4535

| | |
|---|---|
| Postage $ | $5.30 |
| | $4.40 |
| Certified Fee | $0.00 |
| Return Receipt Fee (Endorsement Required) | $0.00 |
| | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| | $3.00 |
| Total Postage & Fees $ | $12.70 |

Postmark Here: BEL-RED POST OFFICE, BELLEVUE, WA 98009, FEB 20 2026; 0192; 33; 02/20/2026

Sent To: Jesse Gary, President + CEO

Street, Apt. No.; or PO Box No.: Century Aluminum, One South Wacker Dr

City, State, ZIP+4: Chicago, IL 60606

PS Form 3800, August 2006 See Reverse for Instructions